Tamera Lynn Walker FOX,
Petitioner–Appellant,

v.

Dennis William FOX, Respondent–
Respondent.

No. 63053.

Missouri Court of Appeals,
Eastern District.
Division One.

Dec. 7, 1993.

Armstrong, Teasdale, Schlafly & Davis, Justin C. Cordonnier and Thomas B. Weaver, St. Louis, for petitioner-appellant.

Chused, Bini, Kohn, Feldmann & Steib, P.C., Chas. H. Steib, St. Louis, for respondent-respondent.

CRANDALL, Presiding Judge.

Wife, Tamera Lynn Walker Fox, appeals from the pendente lite (PDL) order of the trial court in her favor in the action for dissolution of her marriage to husband, Dennis William Fox. We affirm.

Husband and wife were married in October 1982 and separated on July 20, 1992. Wife filed her petition for dissolution of marriage on September 2, 1992. One daughter was born of the marriage. At the time of the PDL hearing, daughter was almost seven years old.

In her PDL motion, filed on September 4, 1992, wife sought temporary maintenance,

child support, medical insurance coverage for her and daughter, attorney's fees, and costs. Attached to wife's motion was her affidavit in which she asserted that she was without sufficient means to support herself. She alleged that husband earned "in excess of $200,000.00 per year" and had "substantial income-producing assets."

At the time of the hearing on her PDL motion, which was held on October 7, 1992, wife testified that she had not been employed outside the home since daughter's birth and had no income-producing assets of her own. In addition to daughter, she had custody of a thirteen year old son from a previous marriage. She was not living in the marital home at the time of the hearing, but intended to rent a furnished home in close proximity to the marital home for $1,850.00 per month. Shortly after the separation, wife spent time in California with another man, who later visited her in St. Louis. She paid for some of the expenses associated with these visits with charge accounts held jointly with husband. Prior to the PDL hearing, she had sent daughter to Florida to stay with grandparents. At the hearing, she expressed her wish that husband pay daughter's return airfare to St. Louis. She stated that her average monthly expenses totalled $10,303.82.

Husband testified that he was a self-employed attorney. His income and expense statement reflected that for 1991 his gross income from the practice of law averaged approximately $20,000.00 per month; and after the standard deductions and expenses of operating his office, his monthly net income was about $13,356.00. He stated that his total monthly expenses amounted to $16,461.00. At the time of the PDL hearing, he was residing in the marital home and wished to remain there. Relying on financial statements husband submitted to a bank, wife attempted to show that husband's projected income for 1992 was in excess of $35,000.00 per month.

During the marriage, husband's and wife's monthly expenses were between $13,000.00 to $14,000.00. Husband testified that one of the problems in the marriage was wife's excessive spending, which prevented them from saving money. Husband said that he had given wife about $7,000.00 on July 20, 1992, when they separated; and at the PDL hearing wife acknowledged that she had little of that money left. According to husband's statement of property, the marital home was valued at $355,700.00, with an outstanding mortgage of $312,000.00. Husband and wife jointly owned securities valued at $15,000.00. Husband's retirement account was approximately $90,000.00 and wife's was about $5,000.00.

The trial court ordered husband to pay temporary maintenance of $3,000.00 per month, child support for daughter in the amount of $1,000.00 per month, and wife's attorney's fees in the amount of $20,000.00. The court also ordered husband to pay $330.00 in airfare to return daughter to St. Louis, to pay the security deposit of $1,850.00 for the house which wife intended to rent, and to pay daughter's tuition at the private school which she attended.

 We will uphold the trial court's order unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The court's discretion in awarding temporary maintenance and attorney's fees pendente lite is broader than at the dissolution hearing. *Camden v. Camden*, 844 S.W.2d 75, 78 (Mo.App.E.D.1992). "A reviewing court is extremely cautious about altering judgments regarding such allowances because they are temporary and their effects do not extend beyond the final hearing of the case." *Cross v. Cross*, 790 S.W.2d 928, 929 (Mo.App.1990). The purpose of temporary allowances is to maintain the status quo pending final judgment. *Id.*

 The spouse seeking maintenance must show that he or she lacks sufficient property to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment. *In re Marriage of Zavadil*, 806 S.W.2d 506, 512 (Mo.App.1991). Section 452.315, RSMo (1986) authorizes a court to issue orders on motions for temporary maintenance. In determining whether an award is warranted,

the court must consider the relevant factors enumerated in § 452.335, RSMo (Cum.Supp. 1992), which include:

(1) The financial resources of the party seeking maintenance, ... and his ability to meet his needs independently ...;

(2) The time necessary to acquire sufficient education or training to ... find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property ... and the separate property ...;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

The trial court has broad discretion in applying these factors; and it determines the witnesses' credibility and evaluates the merits of each party's expense claims. *Eckstein v. Eckstein,* 748 S.W.2d 945, 946–947 (Mo.App. 1988).

■ Wife's sole point on appeal is that the trial court erred in awarding her only $3,000.00 per month in temporary maintenance. She argues that she has no other source of income and that the amount awarded is "grossly inadequate" to meet her financial needs. She points to the disparity between her financial situation and that of husband; namely, that she is incapable of meeting her financial needs, while husband enjoys excess income after his expenses. Finally, she states that there was no evidence at the PDL hearing about her employability.

In the instant action, the court ordered husband to pay substantial expenses in addition to maintenance. He was responsible for providing medical insurance coverage for wife and daughter, paying the private school tuition for daughter, and paying wife's attorney's fees. He was required to pay daughter's airfare to return from Florida, an expense which arose directly as a result of wife's actions in sending daughter there. In addition, while husband was residing in the marital home, he was making the monthly mortgage payment of about $3,667.00 on the home, a marital asset in which wife retained a substantial interest.

■ Wife argues that the maintenance award was not sufficient to meet all of the expenses listed on her income and expense statement. Section 452.335 does not require that the court award maintenance adequate to meet all of wife's needs even if husband has sufficient resources to provide such support. *See Bixler v. Bixler,* 810 S.W.2d 95, 100 (Mo.App.1991). Husband's ability to pay does not justify an otherwise excessive and unwarranted maintenance award. *See Id.* Further, the court could have discounted wife's testimony that all of the expenses listed were necessary to meet her reasonable needs. The standard of living during the marriage did not automatically establish wife's reasonable needs. *See Cross,* 790 S.W.2d at 930. Also, at the PDL hearing, husband specifically stated that one of the problems encountered in the marriage was wife's unfettered spending. At the time of the hearing on October 7, 1992, wife had little of the $7,000.00 which husband had voluntarily given her after their separation on July 20, 1992. There also was evidence that wife's trip to California following the separation involved her spending marital funds.

Wife alleges that, in contrast to her, husband's income exceeded his expenses. A review of husband's income and expense statement for the year 1991 does not support wife's allegation, and indicates instead that his expenses surpassed his income. Further, wife's projection that husband's income for the year 1992 would exceed $420,000.00 was merely speculative in nature at the time of the PDL hearing.

■ Finally, wife contends that the record is devoid of any evidence of her ability to secure employment outside the home. Because wife was the party seeking mainte-

nance, she had the burden of establishing that she was unable to support herself through appropriate employment. Section 452.335 plainly indicates that the dependency of a spouse is not presumed; but rather a spouse seeking maintenance is, in proper cases, to be encouraged and aided in becoming self-sufficient by education or training. *Steinmeyer v. Steinmeyer,* 669 S.W.2d 65, 67 (Mo.App.1984). At the PDL hearing, wife did not present any evidence to establish her inability to work outside of the home. On appeal, she cannot rely on the absence of evidence about her employability to bolster her entitlement to a greater award of maintenance.

The trial court did not abuse its discretion in awarding wife temporary maintenance of $3,000.00 per month. Wife's point on appeal is denied.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.